## STATE OF VERMONT

## ENVIRONMENTAL COURT

|                          | } |                        |
| ------------------------ | - | ---------------------- |
| **Appeal of Nixon, et al.** | } | **Docket No. 21-2-05 Vtec** |
| **(Ackerman motocross track)** | } |                        |
|                          | } |                        |

## Decision

This matter was heard on the merits at the Franklin County Superior Court in St. Albans, Vermont, before Environmental Judge Thomas S. Durkin on June 8, 2005. It concerns an appeal by several neighbors of James and Rene Ackerman ("the Ackermans"). The neighbors contend that a permit was necessary under the Fairfax Zoning Bylaws (Bylaws) prior to the construction and use of a motocross track on the Ackermans' residential property along Shedd Road in the Town of Fairfax ("Town"). The Ackermans contend that such a permit is not necessary for the construction and use of the motocross track on their residential property. The procedural posture of this case is somewhat unique, as is outlined below.

James E. Nixon, Cynthia Livingston and Ruth Dennis are the neighbors who filed a timely joint appeal in this case. They represent themselves in this proceeding and are hereinafter collectively referred to as either "Neighbors" or "Appellants." The Ackermans are represented by Gregg H. Wilson, Esq. The Town is represented by Steven F. Stitzel, Esq., who advised the Court that the Town had elected not to participate in the merits hearing and requested that Mr. Stitzel not attend the hearing.

## Procedural Background

Sometime in 2004, the Neighbors complained to Skip Taylor, the Fairfax Zoning Administrator ("ZA"), about the construction and use of a motocross track on the Ackermans' property. By letter to the Ackermans dated September 30, 2004, the ZA

gave notice of alleged violations of the Fairfax Zoning Bylaws ("Bylaws") related to the motocross track. The Ackermans timely appealed the ZA's notice of violations to the Fairfax Development Review Board ("DRB"), which rendered "Findings of Fact and Order" on the Ackermans' appeal on January 13, 2005.

This Court previously ruled that the DRB Findings and Order constituted a "non-decision," since the DRB reported in its Findings that it was "unable to come to a decision." See DRB Decision and Order dated March 31, 2005. The Neighbors filed a timely appeal to this Court on February 1, 2005.[1]

## Findings of Fact

Based upon the evidence presented at the hearing, the Court makes the following findings as to the facts material to the ZA's notice of alleged violation:

1.      The Ackermans own and reside on an ±11-acre parcel of land on a private road, known as Shedd Road. They purchased the property in about 1987 and made a number of improvements to the property since their purchase.

2.      The Ackerman property contains a main house, an addition thereto, a barn, rock garden and several planting areas. The property is located in the Agricultural/Forest zoning district.

3.      At some point in 2004, the Ackermans constructed a motocross track on a portion of their residential property. Their construction consisted of using a backhoe and other earth moving equipment, including a tractor-driven rototiller, to construct banks, jumps, bumps and the track path on two to three acres of their property.

4.      There was no evidence offered that the Ackermans sought a pre-construction determination from the ZA or other municipal authority as to whether their motocross

---

[1] The question of whether a non-decision constituting deemed approval of an appeal or application pending before an appropriate municipal panel should be regarded as an appealable action under 24 V.S.A. § 4471 has caused the Court a small bit of consternation. But the fact that the DRB here documented its non-decision convinces this Court that the Neighbors' appeal is proper and timely made, thus vesting this Court with jurisdiction.

improvements required prior zoning approval. Mr. Ackerman testified that he did not apply for a permit because he believed that the construction and use of the motocross track was a lawful use of his residential property that did not require a zoning permit.

5. The Ackermans' son is an amateur motocross racer; they constructed the track for their son to use for his enjoyment and to practice for his races. Some of their son's friends also use the track. There are sometimes up to four people using the motocross track on the Ackermans' property.

6. The Nixons own and reside on the property adjacent to the southeast corner of the Ackerman property.

7. It was unclear from the evidence admitted at trial where Appellant Dennis's property is located in relation to the Ackerman property.

8. Appellant Livingston lives nearby, but not adjacent to, the Ackerman property. Mrs. Livingston sometimes provides music lessons at her home for customers or their children.

9. The Ackerman property in general, and the motocross track in particular, are visible from the Nixon home. There appears to be little in the way of vegetation or landscape buffers between the two properties. The land on either side of the adjoining boundary is fairly level with the area upon which the motocross track was built.

10. The testimony at trial did not reveal whether the motocross track is visible from the Dennis or Livingston properties.

11. When one or more riders are using the Ackerman motocross track, noise and dust travel across to the Nixon, Livingston and Dennis properties. The noise emanating from the motocross bikes sometimes makes it difficult to carry on a conversation outside of the Nixon, Livingston or Dennis homes.

12. ZA Taylor testified as to his personal observations of the Ackerman motocross track being used while he was visiting the Nixon and Livingston properties. Mr. Taylor also observed, and the Court so finds, that it was difficult to carry on a normal

conversation at the neighbors' properties, especially when motocross bikes became airborne at the jumps and bumps on the track. The amount of noise traveling onto the neighbors' properties increases considerably when the bikes are airborne.

13. Use of motorized vehicles for outdoor recreation is not uncommon in this area. Several other families use motocross bikes in the summer, snowmobiles in the winter, and ATVs year-round.

14. Mr. Ackerman noted that there were several other families in Fairfax that he was aware had constructed motocross tracks on their residential properties. There was no evidence offered as to which zoning districts these properties were located, or whether the other property owners had obtained a zoning permit prior to constructing their motocross tracks.

### Conclusions

It is first important to note what legal issues are not before the Court in this appeal. The Town has not filed an enforcement action against the Ackermans. We are therefore not asked to consider the appropriateness of fines or penalties, if we were to find that the ZA's original notice of violation (NOV) should stand. Given that the Ackermans timely appealed the ZA's NOV, the question of whether the motocross track constitutes a violation of the Bylaws is the sole legal issue properly before this Court.

Further, the pending legal issue can be distilled down to whether the construction and use of the Ackermans' motocross track requires a permit under the Fairfax Bylaws. We therefore turn to the language of the applicable Bylaws provisions.

The ZA's notice speaks to two general violations: first, "the substantial change in the use of land without a permit, and [second] for violation of the performance standards associated with the use of land, specifically odor, noise, dust and potential damage to an adjoining business." Town of Fairfax, Notice of Violation, at 1 (Sept. 30, 2004). Bylaws Articles 1.0 and 2.0 prohibit a substantial change in the use of land

without a permit.  Bylaws Article 4.0 establishes performance standards for uses in all Town zoning districts.

First, we find that the construction and use of the Ackerman's motocross track constitutes "a substantial change in the use of land,"[2] thereby necessitating a zoning permit under Bylaws Article 2.0, § 2.2(A).  This Bylaws provision defines "land development" by reference to 24 V.S.A. § 4303, specifically § 4303(10), which includes in its definition "any change in the use of . . . land, or extension of use of land."

The Ackermans do not dispute the impacts their motocross track has on their neighbors.  Rather, the Ackermans assert that the track is a permitted extension of their residential use of their property.  We do not find the Ackermans' assertions persuasive. In particular, the fact that two or three other families in Fairfax also have motocross tracks in their residential back yards is not dispositive of the legal issues in this case. Mr. Ackerman's testimony at trial did not establish whether those other motocross tracks are permitted or in the same zoning district.

The facts we do find relevant and dispositive to the legal issue here is the size of the track, the use of significant earthmoving equipment to construct it, and the use of the track by the Ackermans' son and up to three of his fellow racers, both for pleasure and practice in their pursuit of amateur racing accomplishment.  All these factors cause us to conclude that the motocross track constitutes a change in the use of the Ackermans' residential property, and that their change in use is substantial.

Any permitted use in Fairfax must conform to the performance standards in Bylaws § 4.2.  The relevant provisions in § 4.2 prohibit uses that:

(2) Emit any level of noise which is considered offensive; [or]

(4) Emit any dust, dirt or noxious gases which . . . cause[] any damage to property, business or vegetation . . . ."

Bylaws § 4.2.

---

[2] See Bylaws § 1.3(D) for the origin of the term "substantial change in use of . . . land . . . ."

The undisputed testimony at trial established that the Ackermans' neighbors were sometimes unable to carry on normal conversations on their properties when the Ackerman motocross track was in use. The noise was particularly offensive when there were multiple racers using the track and when the racers and their motocross bikes became airborne.[3] Ms. Livingston uses her home for regular music lessons, which were sometimes interrupted by the noise from the motocross track.

In rendering these determinations, we do not (and can not) preclude a later determination that a future application could be approved after-the-fact for construction and use of the Ackerman motocross track. Appellants here make a convincing collateral argument that the Ackermans, by their refusal to submit an application seeking approval of their track, have preempted their neighbors' participation in the review process of their changed use. In any review process, the neighbors would have an opportunity to voice their concerns, and the Ackermans would have an opportunity to respond to those concerns. Permit approval often results from the exchange of concerns and accommodations in the municipal review process, but cannot occur where, as here, a significant creation and expansion of uses occur without review.

In light of the findings and conclusions here, we do hereby grant Appellants' appeal and reinstate the violation determinations announced by the Fairfax Zoning Administrator in his letter of September 30, 2004. The Ackermans' construction and use of their motocross track constitutes a substantial change in the use of their residential property, thereby necessitating their application and receipt of a zoning permit. We

---

[3] The video admitted into evidence via CD recording, Appellants' Ex. 2, evidenced that the motocross bikes frequently became airborne, usually for brief instances, while using the track.

further conclude that the Ackermans' motocross track, as presently constructed and used,[4] violates the use performance standards in Bylaws § 4.2(2) and (4).

The "deemed approved" determination of the Fairfax Development Review Board of the Ackermans' appeal of the Fairfax Zoning Administrator's notice of violation is hereby **VACATED**.  As stated above, the Zoning Administrator's September 30, 2004 determination of violations is hereby **REINSTATED**.

Done at Berlin, Vermont this 12th day of May, 2006.

_____
Thomas S. Durkin, Environmental Judge

---

[4]  When a property owner commences land development without a permit, they afford the municipal panel below, or this Court on appeal, with a curious advantage:  we are not left to speculate on what impacts the proposed structure or expansion of use will cause.  We have, in essence, a full scale model of what the applicant is proposing for development.